# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FORT MCDERMITT PAIUTE AND
SHOSHONE TRIBE,

       *Plaintiff,*

v.

THOMAS E. PRICE *et al.*,

       *Defendants.*

Civil Action No. 17-837 (TJK)

## ORDER

This case, brought under the Indian Self-Determination and Education Assistance Act

("ISDEAA"), 25 U.S.C. § 5301 *et seq.*, concerns a medical clinic in McDermitt, Nevada, a small

hamlet located in a remote area of the state near the Oregon border. *See* Pl.'s Br. at 7-8.[1]  In

February 2016, the Fort McDermitt Paiute and Shoshone Tribe (the "Tribe") informed the Indian

Health Service ("IHS")—an agency within the Department of Health and Human Services

("HHS")—that it wished to take over operation of the clinic.  AR 58.  In March 2016, IHS

announced that it intended to close the clinic.  Pl.'s Br. at 9; AR 42-47.  The Tribe and IHS

began negotiating a "self-governance compact and funding agreement" pursuant to Title V of

ISDEAA, under which the Tribe would operate the clinic.  Pl.'s Br. at 10.  The parties were able

to reach agreement in some areas, but not all.  On October 13, 2016, the Tribe set forth its

position on five remaining sticking points in a "final offer" submitted pursuant to 25 U.S.C.

§ 5387(b).  AR 108-15.  IHS responded on November 23, 2016, with a letter (the "Declaration

---

[1] In deciding the instant motions, the Court has relied on all relevant parts of the record, including: ECF No. 11 ("AR"); ECF No. 12 ("Supp. AR"); ECF No. 14 ("Pl.'s Br."); ECF No. 16 ("Defs.' Br."); ECF No. 18 ("Pl.'s Reply"); ECF No. 20 ("Defs.' Reply").  The Court will cite the transcript of the motions hearing held on September 18, 2018—available for purchase from the Court Reporter—as the "Oral Arg. Tr."

Letter") rejecting the Tribe's proposal on all five points.  AR 130-41.  The parties subsequently resolved three of the five issues through further negotiations.  *See* Pl.'s Br. at 10.

The parties still disagree whether IHS properly rejected two of the Tribe's proposals under IDSEAA, which sets out limited grounds on which IHS may do so.  First, the parties dispute whether IHS's rejection of the Tribe's requested funding level was proper.  IHS asserts that it properly rejected the request, because the amount of funds the Tribe proposed exceeded the funding level to which the Tribe was entitled.  The Tribe's final offer requested $1,106,453 in funding (which consisted of $603,842 for the clinic and $502,611 for an emergency medical services program that the Tribe also operates).  AR 112-13.  IHS claimed in its Declination Letter that the Tribe was entitled to no more than $375,533.  AR 137-38.  Second, the parties dispute whether IHS properly rejected the Tribe's proposal to include a provision related to housing for clinic employees in the funding agreement.  AR 109, 132-34.  The parties have cross-moved for summary judgment on these issues.  ECF Nos. 14, 16.

For the reasons set forth below, the Court will deny both motions without prejudice as they relate to the funding issue, and order further proceedings as set forth below.  The Court will, however, enter summary judgment for the Tribe on the employee-housing issue.

### A.     Standard of Review

As an initial matter, the parties disagree over the relevant standard of review.  Defendants assert that the Court should review its decision in the Declination Letter under the standard provided by the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*  Defs.' Br. at 12.  The Tribe disagrees and seeks *de novo* review.  Pl.'s Br. at 10-12.  The Court is persuaded by opinions holding that ISDEAA requires *de novo* review of the government's decision to reject a "final offer" from a tribe.  *See, e.g.*, *Redding Rancheria v. Hargan*, 296 F. Supp. 3d 256, 265

(D.D.C. 2017); *Manilaq Ass'n v. Burwell*, 170 F. Supp. 3d 243, 247 (D.D.C. 2016); *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 541-42 (D.D.C. 2014).

Therefore, the Court will apply the familiar standard for summary judgment under Federal Rule of Civil Procedure 56. The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

### B.    Recurring Funding Amount

The more significant of the two remaining disputed issues concerns whether the Tribe's final offer proposed recurring funding that exceeded the level to which the Tribe was entitled from IHS's "Hospitals & Clinics" budget line. Pl.'s Br. at 13; Defs.' Br. at 12-13. Both parties agree that the statute permits IHS to reject the Tribe's offer to the extent the funding requested exceeds the amount that Defendant Price, as the head of HHS, "would have otherwise provided for the operation of the programs or portions thereof." 25 U.S.C. § 5325(a)(1); *see id.* § 5385(g) (incorporating this standard from Title I of ISDEAA into Title V); Pl.'s Br. at 12; Defs.' Br. at 3-4. The instant record, however, does not provide clarity about what this amount is.

The problem lies in the fact that the parties have presented the Court with nothing more than a bare "administrative record" with no supporting testimony. The record consists largely of correspondence between the Tribe and IHS, along with financial spreadsheets and similar documents. *See* AR. It is notably devoid of affidavits or testimony that explain what the

numbers in these documents mean.[2]  These documents, and the numbers in them, lend themselves to different interpretations.  As the Tribe's counsel aptly noted at oral argument, there are "a lot of numbers in this record," and the Tribe itself found the financial information proffered by IHS "confusing" during the administrative process.  Oral Arg. Tr. at 41:6-12.

One could reasonably interpret this record to create genuine issues of material fact about the funding amounts in dispute.  To take a particular example: at oral argument, both parties discussed a table attached as Exhibit 5 to the Tribe's October 2016 final offer letter.  AR 125.  The table contains budget information for the 2016 fiscal year.  *See id.*  The "Hospitals & Clinics" line shows "expenditures" of $603,842, but a "budgeted allowance" of only $181,778, resulting in a negative "balance" of $422,064.  It is unclear which number may have represented the amount that HHS intended to spend on the clinic in 2016.  The Tribe asserts that the "expenditures" amount of $603,842 is what HHS would have spent.  Oral Arg. Tr. at 39:14-40:12.  Defendants argue, however, that HHS would not have spent more than it had budgeted (or at least, not from the "Hospitals & Clinics" budget line at issue).  *Id.* at 63:10-22, 65:14-18.  The Court has no affidavits or other testimony to back up either party's assertion about what this document means.

Nor is it clear how these numbers line up with the legal issues that the parties have identified.  These issues include whether IHS properly declined to award the Tribe amounts it had identified as the "tribal share" of the Winnemucca Indian Colony (which has members in the same general area), as well as whether IHS properly refused to provide the Tribe with certain

---

[2] This may reflect the government's misconception that this case involves an APA-style review limited to the administrative record.  It does not.  *See Shoshone-Bannock Tribes of Fort Hall Reservation v. Shalala*, 988 F. Supp. 1306, 1317 (D. Or. 1997) (rejecting proposition that the ISDEAA provides "nothing more than a record-based, deferential court review of agencies' actions").

clinic funding derived from "third-party reimbursements."  *See* Pl.'s Reply at 6-18; Defs.' Reply at 5-11.  It is unclear how to associate these issues with the figures set forth in particular documents in the record, or even how they contribute to the overall amount in dispute.

To be sure, at oral argument, both parties represented that there is no genuine issue of fact regarding the dollar amounts at issue, only issues of law like the ones just described.  *See* Oral Arg. Tr. at 5:9-21, 57:21-58:10.  Nonetheless, the Court needs to know the dollars-and-cents impact of each such issue.  The statute is clear that IHS may reject a tribe's final offer "in part." 25 U.S.C. § 5387(b).  It further specifies that IHS may reject "one *or more* . . . funding levels in such offer."  *Id.* § 5387(c)(1) (emphasis added).  That is, IHS can object to different aspects of the Tribe's proposed funding level (as it has here), and those objections may not rise and fall together.  As a result, it is conceivable that the Court could uphold one of IHS's grounds for rejecting the Tribe's proposed funding level, but not another.  In that event, the Court would need to know how to calculate the dollar impact associated with each issue so that it could fashion appropriate relief.  Even more fundamentally, the Court needs to know that each issue it is deciding actually *has* a potential dollar impact, lest the Court provide an advisory opinion on legal issues with no practical consequence.

The parties suggest that they may be able to clarify the record by stipulating to facts that show the applicable funding amount associated with each legal issue in dispute.  *See* Oral Arg. Tr. at 60:4-13, 61:10-17.  The Court believes that this is a helpful suggestion.  However, the Court cautions the parties that, if they submit a stipulation, it will conclusively establish all facts it contains for the rest of this litigation.  *See Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 677 (2010).  If the parties do not wish this result, they may instead file a statement of undisputed material facts pursuant to Local Civil Rule

7(h).  In that event, the statement of facts must include "references to the parts of the record relied on to support the statement."  LCvR 7(h)(1).  And because many of the financial documents contained in the current record are not self-explanatory, any Rule 7(h) statement must be accompanied by an affidavit (or affidavits) and any other evidence the parties conclude is necessary to support their statement of facts.

Accordingly, the Court will deny both motions without prejudice with respect to the recurring funding amount, and order further proceedings as set forth in Section D below.

### C.     Employee Housing

The current record is, however, sufficient to resolve the parties' dispute about whether IHS properly rejected the Tribe's proposal to include the management of tribally-owned employee housing as part of the funding agreement.  The Tribe is correct that IHS did not.

ISDEAA provides IHS with only four grounds for rejecting a final offer under Title V, and IHS must specify which grounds it invokes when it rejects an offer.  *See* 25 U.S.C. § 5387(c)(1)(A).  In subsequent proceedings, the government may rely only on the particular grounds it specified.  *See id.* §§ 5387(d), 5398.[3]

Here, IHS asserted two grounds in the Declination Letter.  First, it asserted that managing the employee housing was "an inherent Federal function that cannot legally be delegated to an Indian tribe."  AR 132 (quoting 25 U.S.C. § 5387(c)(1)(A)(ii)).  Defendants have since abandoned this ground.  Defs.' Reply at 11-12; Oral Arg. Tr. at 66:19-67:1.  Instead, they rely only on the second ground: that "the amount of funds proposed in the final offer exceeds the

---

[3] In this limited way, the Court's review of a decision under ISDEAA is somewhat similar to review under the APA, where a "reviewing court may not supply a reasoned basis for an agency action that the agency itself did not give in the record under review."  *Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015).  This is true even though the ISDEAA's standard of review is otherwise incompatible with the APA standard, as noted above.

applicable funding level to which the [Indian tribe] is entitled under [Title V of ISDEAA]."  AR

132 (second alteration in original) (quoting 25 U.S.C. § 5387(c)(1)(A)(i)).

Admittedly, there is something odd about the Tribe's request.  As the Tribe itself

explains, the purpose of a compact and funding agreement under Title V is for a tribe to "step

into the shoes of IHS."  Pl.'s Br. at 22 (emphasis omitted).  But here there are no shoes to fill:

both parties assert that the Tribe, not IHS, previously operated the housing at issue.  Oral Arg.

Tr. at 66:8-18; Pl.'s Br. at 19.  Nor is the Tribe seeking federal funding for the employee

housing.  *See* Pl.'s Reply at 19.  It seems strange to include this activity—one that the

government never undertook or funded, and will not fund going forward—in a "funding

agreement" intended to govern programs handed over from the government to the Tribe.

Nonetheless, Defendants cannot prevail on this ground, because their theory does not line

up with the statutory language IHS chose to rely on in rejecting the Tribe's offer: that "the

amount of funds proposed in the final offer exceeds the applicable funding level to which the

Indian tribe is entitled."  25 U.S.C. § 5387(c)(1)(A)(i).  Defendants nowhere assert that the Tribe

ever requested *any* funds to manage the housing, and the Tribe has expressly said that it is not

making such a request.  Instead, Defendants' objection is that including the employee-housing

provision in the funding agreement will result in the government taking on potential tort liability

under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*  AR 133; *see also* 25

U.S.C. § 5396(a) (extending FTCA coverage to activities conducted by tribes pursuant to

compacts and funding agreements under Title V of ISDEAA).  But FTCA liability is irrelevant to

the question before the Court, which is whether Defendants can justify the specific ground IHS

asserted in the Declination Letter: that the "amount of funds" the Tribe has requested is greater

than the "funding level" to which it is entitled.  25 U.S.C. § 5387(c)(1)(A)(i).  Potential tort

liability—a risk of future expenditures that may or may not come to pass—is not a particular "amount of funds." Therefore, the government's argument fails as a matter of law.

The Court will also not consider Defendants' suggestion that the Tribe should adopt certain statutory standards for managing the property to reduce any potential liability. *See* Defs.' Br. at 20-21 (citing 25 U.S.C. § 1638a). The suggestion may well be a prudent one. Nonetheless, the Court has no reason to pass on it, because potential tort liability is not relevant under the analysis that 25 U.S.C. § 5387(c)(1)(A)(i) requires the Court to undertake.

For these reasons, the Court will grant the Tribe's motion on the employee-housing issue.

### D.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that the Tribe's motion (ECF No. 14) is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' motion (ECF No. 16) is **DENIED**. Summary judgment is granted for the Tribe and against Defendants on the issue of the employee-housing provision, and is denied without prejudice with respect to the recurring-funding issue.

It is **FURTHER ORDERED** that the parties shall meet and confer and, no later than **October 26, 2018**, file the following:

1.    A joint statement of the remaining disputed legal issues in this case.

2.    Either:

    (a)    A joint stipulation of facts that includes, at a minimum, the amount of recurring funding to which the Tribe will be entitled if it prevails on each of the separate disputed legal issues; or

    (b)    A joint statement (or, if the parties cannot agree, separate statements) of undisputed facts that includes, at a minimum, the above information about the amount of recurring funding to which the Tribe will be entitled, along with one or more affidavits (and any attachments the parties believe are necessary) supporting the facts set forth in the joint statement (or separate statements).

3.  A proposed schedule for renewed motions for summary judgment on the issue of the recurring funding amount.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 27, 2018